269 N.J. Super. 198 (1993)
635 A.2d 104
EILEEN FOTI, PLAINTIFF-APPELLANT,
v.
JEFFREY K. JOHNSON, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted November 23, 1993.
Decided December 17, 1993.
*199 Before Judges PRESSLER, DREIER and KLEINER.
Robert M. Rich, attorney for appellant.
Wolff, Helies & Duggan, attorneys for respondent (Maureen G. Bauman, on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This is a verbal threshold case in which plaintiff Eileen Foti appeals from a summary judgment dismissing her personal injury, automobile negligence complaint against defendant Jeffrey K. Johnson. The judge concluded, based on the motion papers, that plaintiff, who sustained soft tissue injuries, had made an inadequate showing of objective criteria to warrant a jury trial. We disagree and consequently remand for trial.
At the time of the accident plaintiff, then 25 years old, had just completed her graduate training in master printmaking, having obtained both a bachelor's and master's degree in printmaking as well as a certification as a master printmaker. Having completed her studies in New Mexico, she had just come to New Brunswick, *200 New Jersey, where she had obtained employment at Rutgers University as its master printmaker. The accident occurred in New Brunswick on January 5, 1989, as the alleged result of defendant's having passed through a stop sign on Livingston Avenue.
According to the motion papers, the consequences of the accident, in which plaintiff suffered a low-back injury, have been professionally devastating. She asserts that she is no longer able to manipulate the heavy limestones that constitute the surface for a large proportion of prints. Although she can still manipulate the metal plates which provide an alternative surface, the plates are regarded as a less acceptable surface and are not utilizable at all for some techniques. Beyond that, she experiences severe and constant pain whenever she works despite beginning and ending each day with exercises and taking breaks from her work in order to perform exercises designed to relax her back muscles. In sum, it is her assertion that as a result of the accident she is unable to pursue the profession for which she arduously trained. The report of plaintiff's examining physician confirms that plaintiff "is young and she should be able to find a different job in the future, even if it requires retraining."
The trial judge suggested that the so-called subjective criteria for meeting the verbal threshold as explicated by Oswin v. Shaw, 129 N.J. 290, 609 A.2d 415 (1992), were not the problem here. This is plainly so. The substantial effect of plaintiff's back injury on her life was poignantly asserted. The judge's concern rather was with the so-called objective criteria, which, he concluded, had not been demonstrated by the motion papers. We do not share his appraisal.
The experts for both parties agreed that plaintiff suffered from a pre-existing spondylolisthesis and spondylolysis at L5-S1. Spondylolisthesis is defined as the "forward movement of the body of one of the lower lumbar vertebrae on the vertebra below it, or upon the sacrum." Stedman's Medical Dictionary, Third Unabridged Lawyers' Edition (1972). Spondylolysis is defined as the *201 "breaking down or dissolution of the body of a vertebra," or "a cleft formation in the vertebral body," or a "loosening of the firm attachment of the contiguous vertebrae." Ibid. According to plaintiff's medical history, these conditions were caused by a fall when she was a child and confirmed by x-ray when she was fourteen. These physical conditions had, however, been functionally quiescent until this accident. She had had no episodes of pain or other problem until then. It is plaintiff's theory that the accident aggravated the pre-existing condition, resulting in her present disability.
Although plaintiff's treating physician noted that there had been no appreciable movement of the spondylolisthesis since the 1977 x-rays, it was nevertheless his opinion that the accident had aggravated that condition. His report suggests that that opinion was based on plaintiff's continuing back spasms and pain. In addition, plaintiff's examining physician, while also noting the absence of any appreciable x-ray change, diagnosed aggravation of the preexisting condition as well, relying on findings of "mildly spastic" musculature, "a few scattered trigger points," discomfort of palpation of the right sciatic nerve, a "questionable positive straight leg raising on the right," an absent right ankle jerk, and "a sensory deficit in the right SI distribution." At least some of these, including the absent ankle jerk and the spasm, are obviously objective findings.
Defendant's examining physician did not dispute the preexisting condition, although his report notes that since he had not reviewed any of the x-rays, he was unable to determine the grade of spondylolisthesis. He also expressed the opinion that these preexisting conditions are usually asymptomatic and therefore probably not the cause of plaintiff's present complaints, although he did note that these conditions at L5-S1 could cause pain in some people. He found no other objective basis for plaintiff's continuing pain and present disability.
We think it clear that demonstrable aggravation of a demonstrated pre-existing condition meets the Oswin requirement for *202 objective findings to explain the symptomatology from which a plaintiff suffers. Compare Polk v. Daconceicao, 268 N.J. Super. 568, 634 A.2d 135 (App.Div. 1993), in which we recognized that principle but concluded that the record there had failed to provide a sufficiently adequate showing of a demonstrable aggravation to survive defendant's summary judgment motion. Here plaintiff's experts expressed the medical opinion that spondylolisthesis and spondylolysis can be aggravated without appreciable x-ray change. It is, as we understand it, inherent in the original condition itself that a new traumatic involvement of the affected area can trigger symptomatology not previously experienced even without a demonstrable deterioration in the condition itself. It then becomes a question of fact as to whether plaintiff's physical problems are to be attributed to the new trauma to the L5-S1 area because it aggravated the pre-existing condition, resulting in the disability.
In our view, that theory of plaintiff's symptoms meets both the prescription of Oswin and the legislative policy implicit in the verbal threshold legislation. The legislative purpose was to weed out of the judicial system those causes of action arising out of automobile negligence involving injuries that are not serious. It did so by specifying nine categories of injury that meet the verbal threshold, three of which cover serious soft tissue injuries. The point of the categorization is to define those injuries that are sufficiently serious to warrant an action for non-economic damages in the courts. As Justice Clifford explained in Oswin, supra, at 318, 609 A.2d 415, plaintiff, particularly where soft tissue injuries are involved, "must show a nexus between the injury and the disability." The nexus is ordinarily proved by "objective evidence of injury and disability that fit the statutory definition of `serious injury'...." Id. at 318-319, 609 A.2d 415.
As we understand the principles of Oswin as applied to this situation, objective evidence of a pre-existing condition will suffice to meet the objective evidence test provided that as a matter of medical opinion, aggravation of the original condition by the new trauma has actually produced the disability now complained of and *203 provided further that the pre-existing condition, by its nature, has the capacity to have produced the disability without further objective deterioration. If those qualifications are medically supported, then the requisite nexus between injury and disability will have been proved and the desideratum of an objectively-based medical opinion that the disability is fairly attributable to the injury suffered in the accident will have been met.
We do not, of course, intend to suggest that plaintiff must prevail. She is, however, clearly entitled to put her proofs, including her medical proofs, before the jury just as defendant is entitled to the opportunity to counter those proofs.
The summary judgment dismissing the complaint is reversed and we remand for further proceedings.