773 A.2d 730 (2001)
340 N.J. Super. 33
Caline FOWLER and Raymond Fowler, her husband, Plaintiffs-Appellants,
v.
CRYSTAL MOTORS, INC., Defendant-Respondent.
No. A-6956-99T5.
Superior Court of New Jersey, Appellate Division.
Argued May 9, 2001.
Decided June 11, 2001.
*732 Seamus Boyle, Mountainside, argued the cause for appellants, (Weiseman, Hely, DiGioia & Boyle, attorneys; Mr. Boyle, on the brief).
John A. Camassa, Manasquan, argued the cause for respondent, (Connell & Connell, attorneys; Mr. Camassa, of counsel and on the brief).
Before Judges KING,[1] COBURN and LEFELT.
*731 The opinion of the court was delivered by LEFELT, J.A.D.
The Legislature amended the verbal threshold statute in 1998 to modify significantly the limitation on the right to sue for non-economic damages. L.1998 c. 21, § 11. This appeal is controlled by the preexisting 1988 statute's definition of the verbal threshold and presents two issues. The first is whether plaintiff Caline Fowler presented sufficient evidence of a rib fracture under the 1988 formulation of the verbal threshold statute, N.J.S.A. 39:6A-8, to withstand defendant's summary judgment motion. The second assumes that plaintiff has suffered a rib fracture and asks whether plaintiff must nevertheless demonstrate that the injury has had a serious impact on plaintiff and her life in order to surmount the verbal threshold and sue for pain and suffering. The motion judge answered the first question in the negative, the second question in the affirmative, and dismissed plaintiff's complaint. We disagree with the motion judge's answers to both questions and reverse and remand.
Plaintiff was involved in two accidents within six months of each other. The first occurred on January 20, 1997, when plaintiff fell on the premises of defendant Crystal Motors, Inc. The second occurred on July 4, 1997, when plaintiff was involved in an automobile accident with defendant Margarita Sierra. When plaintiff fell, she allegedly sustained lumbosacral strain and sciatica. It was the automobile collision in July 1997, however, that plaintiff asserts fractured her rib.
New Jersey subscribed to nofault insurance legislation with the hope of "compensating a larger class of citizens than the traditional tort-based system and doing so with greater efficiency and at a lower cost." Emmer v. Merin, 233 N.J.Super. 568, 572, 559 A.2d 845 (App.Div.) (citing Mario A. Iavicoli, No Fault & Comparative Negligence in New Jersey 20 (1973)), certif. denied, 118 N.J. 181, 570 A.2d 950 (1989). As part of the no-fault legislation, the Legislature eventually adopted in 1988 a verbal threshold to eliminate non-economic damage claims for some soft tissue injuries. L.1988, c. 119, § 6, eff. January 1, 1989. These injuries, that often could not be determined objectively, had been frequently diagnosed solely from plaintiffs' subjective complaints. The Legislature, in passing the verbal threshold, hoped to bring down automobile insurance costs by permitting law suits *733 only for those soft tissue injuries that were serious. Oswin v. Shaw, 129 N.J. 290, 295-97, 609 A.2d 415 (1992).
Therefore, under the 1988 system, in exchange for lower insurance rates, plaintiffs could purchase an automobile insurance policy with a verbal threshold. The 1988 verbal threshold, N.J.S.A. 39:6A-8a, provides that plaintiffs may not sue for non-economic damages, such as pain and suffering, unless the personal injury suffered by plaintiff can be categorized as, at least one, of the following injury types: (1) death; (2) dismemberment; (3) significant disfigurement; (4) fracture; (5) loss of fetus; (6) permanent loss of use of body organ, member, function or system; (7) permanent consequential limitation of use of a body organ or member; (8) significant limitation of use of a body function or system; or (9) a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute that person's usual and customary daily activities for not less than 90 days during the 180 immediately following the occurrence of the injury or impairment. Ibid.
The leading Supreme Court decision construed the 1988 statute in the context of a soft tissue injury and developed a two prong test that plaintiffs must satisfy to surmount the verbal threshold. Oswin, supra, 129 N.J. at 314, 609 A.2d 415. To withstand summary judgment, the first prong requires that plaintiffs must show a material factual dispute by credible, objective medical evidence that their injuries fall within one of the nine statutory categories. Ibid. The second prong requires that plaintiff establish that the injury has had a serious impact on his or her life. We will discuss the second prong in greater detail later.

I.
In an effort to establish her rib fracture by objective medical evidence, under Oswin`s first prong, plaintiff presented the following pertinent evidence. After her automobile accident, plaintiff was seen in the Muhlenberg Hospital emergency room by Dr. Rivera. The doctor includes as "Diagnostics: CXR: L 3rd RIB FX no pneumo no infilt scapula normal." Dr. Rivera also wrote an instruction to provide discharge instructions on rib fractures. Plaintiff was provided with instructions noting that "[y]our exam shows that you have one or more fractured ribs." Nevertheless, the formal reading of the chest xray contains no mention of any rib pathology. It states: "A single, frontal, AP projection is submitted of the chest. The heart is upper-normal in size. The lungs are clear." The report also indicated that "There is no active disease noted in the chest." A further x-ray of the left scapula notes: "Examination is performed of the left scapula. No osseous or articular abnormalities are seen. If warranted, specific rib views should be considered."
Plaintiff also visited the office of Somerset Orthopedic Associates and was examined by Dr. Nordstrom who noted: "We have a copy of her records from Muhlenberg Hospital. They x-rayed her ribs and she has a left rib fracture in the posterior axillary line on the 3rd level. They xrayed her shoulder with a good transscapular view and I see no evidence of dislocation or fracture. Scapula appears Okay." Dr. Nordstrom's impression of plaintiff's injury included "fractured rib 3rd on the left."
Defendant argues that most significantly, the formal radiological report failed to note any rib fracture. Furthermore, defendant argues that Dr. Nordstrom's diagnosis was not clearly based upon any independent review of the x-ray films. *734 According to defendant and the motion judge, plaintiff's evidence was insufficient to establish by objective medical evidence that her injuries fell within the fracture category of N.J.S.A. 39:6A-8a, and she thus failed to meet the first prong of Oswin, supra, 129 N.J. at 318, 609 A.2d 415.
Because plaintiff appeals from summary judgment dismissing her complaint, we must view the evidence in the light most favorable to plaintiff. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). Viewing the evidence from plaintiff's perspective, there was evidence in Dr. Nordstrom's report to infer that he was reviewing the actual xray films, rather than any reports, when he diagnosed the fracture. He spoke of seeing "no evidence of dislocation or fracture" of her shoulder. Furthermore, nowhere in the written records from Muhlenberg is there any reference to the left rib fracture being in the posterior axillary line of the 3rd level. This observation, plaintiff suggests, could only be gleaned from the actual x-ray film.
We have concluded that plaintiff submitted sufficient evidence to raise a factual dispute regarding whether she sustained a rib fracture. "[O]nce a court determines that evidence bearing on a plaintiff's injuries could, if believed by the factfinder, satisfy the statutory verbalthreshold requirement, any disputed issues regarding the nature and extent of those injuries must be decided by the jury." Oswin, supra, 129 N.J. at 313, 609 A.2d 415. Therefore, a jury must determine whether plaintiff has established by objective medical evidence that she suffered a rib fracture. Summary judgment on this point must be reversed.

II.
We proceed to consider the second question presented by this appeal, and the one in which there appears to be some confusion in the cases. Under Oswin, besides establishing the type of injury by objective medical evidence, the second prong of the test requires that plaintiff establish that the injury had "`a serious impact on the plaintiff and her life.'" Oswin, supra, 129 N.J. at 317, 609 A.2d 415 (quoting Oswin v. Shaw, 250 N.J. Super. 461, 470, 595 A.2d 522 (App.Div.1991)). Defendant argues that even if plaintiff meets the first prong of the test and establishes the rib fracture, she must also meet the subjective "serious impact" second prong. Thus, defendant asserts that because plaintiff has not established any significant impact, she fails to surmount the threshold, even if she has a rib fracture.
In Oswin, the Supreme Court considered the case of a plaintiff who had suffered a soft tissue injury. Oswin, supra, 129 N.J. at 294, 609 A.2d 415. Oswin addressed only two questions: whether the court or jury must decide the verbal threshold issue and whether Oswin's disability fell within one of the nine statutory categories. Id. at 302, 609 A.2d 415. See also Thomas P. Weidner and Michael J. Canavan, The "New" Verbal Threshold: But is it Improved?; 24 Seton Hall Legis. J. 122-23 ("The Oswin Court adopted what can be characterized as a `summary judgment plus' standard.... Ultimately, the Oswin Court announced a three-part requirement for plaintiffs seeking to pierce the verbal threshold under types 6, 7, or 8"(emphasis added)). Oswin did not address the issue we confront in this appeal: whether a plaintiff must prove the injury has had a serious impact on his or her life for all of the injury types listed in the verbal threshold statute.
*735 In Puso v. Kenyon, 272 N.J.Super. 280, 291, 639 A.2d 1120 (App.Div.1994), we dealt with a type three injury, "significant disfigurement." In the course of determining how to evaluate whether a particular disfigurement was "significant," we indicated that the Supreme Court "did not articulate [the] standard for all of the exempt injuries...." Id. at 290, 639 A.2d 1120. We noted that "type one (death); type two (dismemberment); type four (fracture); and type five (loss of a fetus) need no definition. These types define themselves." Ibid. We further observed that "the definition adopted by Oswin, which specifically applied to a type eight injury and utilized the Licari[v. Elliott, 57 N.Y.2d 230, 455 N.Y.S.2d 570, 441 N.E.2d 1088 (1982) ] definition which itself applied to a type eight and nine injury, is [also] the appropriate definition for use in evaluating type six and type seven injuries." Puso, supra, 272 N.J.Super. at 291, 639 A.2d 1120. We did not interpret Oswin to expand the second prong significant impact test to a fracture injury.
An objectively diagnosed fracture is not among those injuries for which the Legislature intended in 1988 to restrict noneconomic recovery. "The No Fault Act distinguishes between fractures and soft tissue injuries that involve the nerves, muscles, tissues, tendons, ligaments, cartilage and other soft parts of the body." Gerald H. Baker, A Look at No Fault in 1997, 151 New Jersey Law Journal 80 (January 12, 1998). Thus, a
person who sustains `a fracture' will satisfy type 4 of the verbal threshold; however, a person who suffers a soft tissue injury will meet the verbal threshold only if the injury involves a permanent loss of use of a body function (type 6), a permanent consequential limitation of use of a body member (type 7) or a significant limitation of use of a body function (type 8).

[Ibid.]
The same magnitude of diagnostic uncertainty that surrounds soft tissue injuries is usually not present with fractures. Fractures are usually not surmised solely from subjective complaints. Fractures may be diagnosed by observation, if the bone punctures the skin, for example, or palpatation, in some cases, where the bone break can be felt by the physician. But almost always, fracture diagnosis requires some form of x-ray, MRI or other imaging technique.
We do not believe that the Legislature intended in the 1988 verbal threshold legislation to restrict tort recovery for any objectively diagnosed fracture. Justice Stein recognized the difference between a fracture and a soft tissue injury when he stated that
[plaintiffs who sustain fractures or significant disfigurement ... need not wait the result of prolonged medical treatment before filing suit. But those verbal threshold plaintiffs relying on category 7, 8, or 9 as the basis for claiming entitlement to non-economic damages may not, for many months following the accident, possess sufficient information to enable a lawyer to determine whether their injuries satisfied verbal threshold.]
[Prevratil v. Mohr, 145 N.J. 180, 202, 678 A.2d 243 (1996) (Stein, J., dissenting).]
The Governor also, during the Legislature's effort to revamp the State's automobile insurance law in 1998, interpreted the existing statute to mean that any evidence of a fracture would surmount the verbal threshold, thereby allowing recovery for non-economic loss. Governor Whitman, in a Conditional Veto Message, stated:
The 1988 [verbal] threshold has not worked. By allowing recovery for injuries that are nonpermanent, i.e. that *736 heal, and for fractures that are not serious, the statute has not served as a meaningful limitation to control premium costs. Because the substantive standards are so nebulous, moreover, they have encouraged the employment of extensive and superfluous medical and chiropractic testing and treatment in order to establish standing to sue for pain and suffering. The substantial increase, since 1988, in the cost of medical expense benefits is the best indication that those benefits have been manipulated in order to frustrate the intent of the lawsuit [verbal] threshold.

[Governor's Reconsideration Message to S. 3, First Reprint, April 27, 1998.]
In 1998, the Legislature revised the language of the statute and allowed recovery for non-economic loss in cases where the plaintiff has suffered "displaced fractures," L.1998, c. 21, § 11, implying that, unlike the form of the statute that applies to this case, recovery would no longer be permitted for simple fractures. See Weidner and Canaran, supra, 24 Seton Hall Legis. J. at 129 n. 54.
The serious impact test in Oswin describes the type of disability that must be suffered by a plaintiff to qualify under the statute. The 1988 verbal threshold statute, however, specifies disability only in the soft tissue injury categories. Death or fracture, for example, do not include in their statutory reference any disability. A type six injury, however, talks about "loss of use of a body organ, member, function or system." Type seven requires "consequential limitation of use of a body organ or member." Type eight speaks of "significant limitation of use of a body function or system." Oswin thus utilizes the serious impact test to help describe those body losses and limitations that can be considered serious injuries. Oswin, supra, 129 N.J. at 318, 609 A.2d 415.
As Oswin pointed out, New York cases are helpful because New Jersey's statute was based on New York's, and the statutes are similar. The New York statute specifically mentions "serious injury." New Jersey does not expressly use that term. However, the New York statute defines "serious injury" with a list of nine injury categories that is "almost identical" to New Jersey's statute. Oswin, supra, 129 N.J. at 315, 609 A.2d 415.
The New York cases recognize that a fracture is conclusive of a serious injury. In Redmond v. Schultz, 152 A.D.2d 823, 544 N.Y.S.2d 33 (1989), the New York court held that it was error to fail to instruct the jury that a "`fracture' is included within the definition of a serious injury" under the law. Id. at 824, 544 N.Y.S.2d 33. In In re Travelers Ins. Co. v. Job, 239 A.D.2d 289, 658 N.Y.S.2d 585 (N.Y.App.Div.1997), the court held "[t]he doctor's diagnosis of an avulsion fracture of the tibial tubercle only two weeks following the accident is sufficient to support a finding of `serious' injury within the meaning of Insurance Law, § 5102(d), which encompasses a fracture as a matter of definition." Id. at 291, 658 N.Y.S.2d 585. In Kolios v. Znack, 237 A.D.2d 333, 655 N.Y.S.2d 443 (N.Y.App.Div.1997), plaintiff suffered a non-displaced nasal fracture and the court held that "[s]ince a `fracture' is included within the statutory definition of `serious injury' ... the defendants failed to make out a prima facie case that the plaintiff did not suffer a serious injury and their motion for summary judgment should have been denied." Ibid.; See also, Lanpont v. Savvas Cab Corp., 244 A.D.2d 208, 211, 664 N.Y.S.2d 285 (N.Y.App.Div.1997).
In Bebry v. Farkas-Galindez, 276 A.D.2d 656, 714 N.Y.S.2d 734 (N.Y.App. Div.2000), the appellate court pointed out that a fractured foot was included within *737 the statutory definition of "serious injury." Thus, the appellate court concluded that "the Supreme Court erred in instructing the jury to determine, inter alia, whether the plaintiff sustained a permanent consequential limitation of his foot." Ibid. Such an inquiry into limitation or disability is unnecessary when plaintiff has sustained a fracture.
Thus, it would seem that any injury that meets one of New Jersey's nine categories contained in the 1988 verbal threshold formulation can be considered "serious" and sufficient to surmount the verbal threshold. Defendant, however, cites a trial court opinion as support for the proposition that "serious impact" analysis must be conducted even if objective, credible evidence of a fracture has been shown. In Levine v. Miller, 272 N.J.Super. 512, 640 A.2d 363 (Law Div.1993), the court held that a fracture to plaintiff's prosthetic device permanently implanted in her mouth could constitute a serious injury satisfying the verbal threshold. In so deciding, the court not only considered whether plaintiff presented objective, credible evidence of injury, but also whether plaintiff had presented evidence which would support a jury finding that plaintiff's injuries had a "serious impact" on her life. Id. at 517, 640 A.2d 363.
The trial judge, however, did not focus on this specific issue. Neither party argued that any part of the Oswin test might not be applicable. In addition, the trial judge believed that plaintiff's injury could also satisfy the verbal threshold as a category six, permanent loss of the use of a body organ, member, function or system (a soft tissue injury). Id. at 517-18, 640 A.2d 363. In any event, to the extent that the opinion indicates that the second prong of Oswin must be applied to an objectively determined fracture, we disagree, and that portion of the decision is overruled.
Jefferson v. Freeman, 296 N.J.Super. 54, 685 A.2d 1357 (App.Div.1996), according to defendant, applied the "serious impact" standard to a type 4 injury, as did Moreno v. Greenfield, 272 N.J.Super. 456, 640 A.2d 335 (App.Div.1994). However, neither case focused on the issue as we have framed it, and neither actually determined that the serious impact test must be applied to fractures.
In Jefferson, the issue before another panel of this court was the appropriate jury instruction for a type 9 injury. In that case, there was no allegation of fracture, and plaintiff alleged surmounting the verbal threshold under type 7,8 or 9. However, in its legal discussion the court did state in dicta as follows:
While considering claims for permanent injuries under types four, six, seven or eight, we have consistently evaluated various proofs of the `serious impact' on a plaintiff's life and have consistently held that subjective evidence of such impact combined with objective medical evidence of causation, would suffice. Typically that evidence is presented by certification accompanying the opposition to a defendant's pretrial motion for summary judgment. See, Sherry v. Buonansonti, 287 N.J.Super. 518, 671 A.2d 606 (App.Div.1996); Cavanaugh v. Morris, 273 N.J.Super. 38, 41, 640 A.2d 1192 (App.Div.1994); Moreno v. Greenfield, 272 N.J.Super. 456, 464-65, 640 A.2d 335 (App.Div.1994); Foti v. Johnson, 269 N.J.Super. 198, 635 A.2d 104 (App.Div. 1993); Polk v. Daconceicao, 268 N.J.Super. 568, 576, 634 A.2d 135 (App.Div. 1993).
A review of the cited cases reveals no case in which we have held that the serious impact requirement applied to a type 4 fracture. In Sherry v. Buonansonti, 287 N.J.Super. 518, 671 A.2d 606 (App.Div. 1996), plaintiff's injury did not involve a *738 fracture, but was "very suggestive of degeneration." Id. at 521, 671 A.2d 606. Cavanaugh v. Morris, 273 N.J.Super. 38, 640 A.2d 1192 (App.Div. 1994), held that continuing spasm long after the accident met Oswin`s objective evidence requirement for a soft tissue injury. In Cavanaugh, x-rays for fracture were negative, but plaintiff suffered from continuing spasm. Id. at 40-41, 640 A.2d 1192. Moreno v. Greenfield, 272 N.J.Super. 456, 640 A.2d 335 (App.Div.1994), also did not hold that a serious impact requirement is applicable to a type 4 injury. In Moreno, objective evidence of injury showed spasm and a herniated disc. In dicta the court stated "in N.J.S.A. 39:6A-8a the nine classes of compensable injuries include type 4, namely a `fracture.' Although plaintiff's vertebrae did not fracture, the intervening disc herniated, creating a potentially more painful and long-lasting problem." Id. at 466, 640 A.2d 335. Foti v. Johnson, 269 N.J.Super. 198, 635 A.2d 104 (App.Div.1993), reviewed the criteria required for proving an aggravation of a preexisting spondylolisthesis and spondylosis. Id. at 202, 635 A.2d 104. There was no allegation of fracture. Plaintiff sustained a "soft tissue" injury. Id. at 199, 635 A.2d 104. Finally, Polk v. Daconceicao, 268 N.J.Super. 568, 634 A.2d 135 (App.Div. 1993), concerned aggravation of pre-existing osteoarthritis and obesity. Plaintiff argued that his hip arthritic condition constituted type six, seven or eight injuries. Id. at 570-72, 634 A.2d 135. Polk contains no discussion of type 4 injuries.
Defendant also cites in support of its position an unreported case, again by another panel of this court, which found "the judge did not err in determining a type four injury, a tooth fracture, had to have a serious impact on plaintiff's life." Kapr v. Corbett, No. A-1482-99 (App.Div. Oct. 30, 2000) (This decision is not cited as precedence, but merely to respond to counsel's argument. R. 1:36-3.) This case actually held that the verbal threshold defense was not available because defendant's pick-up truck did not meet the statutory definition of "automobile" under N.J.S.A. 39:6A-2(a). Thus, the discussion about the "serious impact" test was dictum. Nevertheless, we respectfully disagree with this dictum and any statements in the reported cases that can be read as support for applying this test to an objectively determined rib fracture.
We conclude, therefore, that "any fracture of any bone anywhere in the body, no matter how small, no matter how quickly healed and no matter how insignificant in its overall impact on the [plaintiff's] day-to-day activities, is sufficient to meet the [1988] threshold." Cynthia M. Craig & Daniel J. Pomeroy, New Jersey Auto Insurance Law, § 15:4-1 at 245-46 (2001). The "[Supreme] Court has added, as to soft-tissue cases only, this additional requirement of `serious impact.'" Craig and Pomeroy, supra, at 246.
We acknowledge, as did Moreno, supra, 272 N.J.Super. at 466 n. 3, 640 A.2d 335, the anomaly of allowing a very minor fracture across the verbal threshold and barring some soft-tissue injuries that may nevertheless cause extremely painful conditions. However, the simple answer to this anomaly is that such argument is more appropriately addressed to the Legislature. Indeed, in 1998, the Legislature answered this argument by amending the verbal threshold to permit suit for noneconomic loss for fractures that are "displaced." L.1998, c. 21, § 11.
To recapitulate, we conclude that summary judgment should not have been granted defendant because a jury must determine whether plaintiff has established a fracture by objective medical evidence. If the jury so finds, then plaintiff *739 may recover non-economic damages, without the need to first establish any "serious impact." If the jury fails to find that plaintiff has established the fracture by objective medical evidence, then plaintiff may only recover economic losses, if any.
We specifically hold that for automobile insurance policies covered by the 1988 verbal threshold, N.J.S.A. 39:6A-8 (L.1988, c. 119, § 6), once a fracture is diagnosed by objective medical evidence, there is no need to establish significant impact or any disability to surmount the verbal threshold. Upon objective proof of fracture, a plaintiff surmounts the threshold and may present a case for non-economic damages to the jury.
Reversed and remanded for further proceedings consistent with this decision.
NOTES
[1] Judge King did not hear this case, but has, with the consent of counsel, joined in its consideration and in this opinion.